IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**Catherine Elizabeth Stewart**                                                                 **Plaintiff**

v.                                No. 4:13–CV–335-SWW–JTK

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                         **Defendant**

### Instructions for Recommended Disposition

The following recommended disposition will be sent to U.S. District Judge Susan W. Wright. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

### Recommended Disposition

Catherine Elizabeth Stewart seeks judicial review of the denial of her application

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

for social security disability benefits.[3] Stewart last worked in December 2007 for Winn Dixie as a cashier and deli manager.[4] She quit her job when she moved to be closer to her daughter.[5] She looked for other work, but did not find another job.[6] At that time, Stewart's husband was ill and unable to work. She became her husband's care-giver.[7] She based disability on her nerves, hands, lower back, depression, and headaches.[8] Shortly after applying for disability benefits, she underwent triple bypass surgery.

**The Commissioner's decision**. The Commissioner's ALJ initially determined that Stewart can do some light work,[9] but the Commissioner's Appeals Council remanded the claim back to the ALJ to provide a reasoned resolution of conflicts in the medical opinion evidence.[10] After doing so, the ALJ determined Stewart can do some

---

[3] SSA record at pp. 212 & 219.

[4] *Id*. at pp. 260 & 268.

[5] *Id*. at pp. 46-47 & 53. *But see id*. at 259 (reporting that she quit her job because she couldn't concentrate and was depressed; she takes care of her husband).

[6] *Id*. at pp. 47-48.

[7] *Id*. at p. 70, 276-77 & 283.

[8] *Id*. at p. 259.

[9] *Id*. at p. 96.

[10] *Id*. at pp. 106-07.

sedentary work.[11]  Because a vocational expert identified available sedentary work,[12] the ALJ determined Stewart is not disabled and denied the application.[13]

Stewart asked the Appeals Council to review the second decision.[14]  The Appeals Council denied the request.[15]  Stewart filed this case to challenge the decision.[16]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[17]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Stewart's allegations**.  Stewart's primary argument challenges the ALJ's resolution of conflicts in medical opinion evidence; she says the ALJ's explanation lacks

---

[11]*Id*. at p. 20.

[12]*Id*. at pp. 50 & 78-79.

[13]*Id*. at pp. 25-26.

[14]*Id*. at p. 9.

[15]*Id*. at p. 1.

[16]Docket entry # 1.

[17]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

rationale. She disagrees with the evaluation of her credibility. She contends she is unable to do sedentary work. She maintains the ALJ should have included a limited use of the hands, more balance restrictions, and an older age in determining her ability to work. For these reasons, she maintains substantial evidence does not support the ALJ's decision.[18]

**Applicable legal principles**. For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Stewart can do some sedentary work.[19] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[20] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[21] The ALJ reduced sedentary work by the following limitations: (1) occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; (2) no climbing ladders, ropes, or scaffolds; (3) no overhead work; and (4) no

---

[18]Docket entry # 9.

[19]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[20]20 C.F.R. §§ 404.1567(a) & 416.967(a).

[21]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases or poor ventilation.[22] The question before the court is whether a reasonable mind would accept the evidence as adequate to show Stewart can work within these parameters.

**Medical evidence**. The ALJ's determination about a claimant's ability to work must be supported by medical evidence; a claimant's subjective allegations are not enough to prove she is disabled.[23] The medical evidence in this case establishes the following impairments:

> 1. <u>Osteoarthritis</u>. "Osteoarthritis is a chronic joint disease involving degenerative changes in joint cartilage and the underlying bones."[24] It is part of the aging process. The disease is diagnosed using clinical findings and osteoarthritic changes shown on x-rays.[25] X-rays show Stewart has mild osteoarthritic changes in the spine, shoulders, and right hand.[26] Mild changes suggest minimal impairment. Mild osteoarthritic changes have not limited Stewart's ability to walk, stand, or sit. During her consultative exams, she walked normally, got on and off the exam table without difficulty, squatted and rose, bent over without pain, sat without difficulty, and grasped objects with full muscle strength.[27] She demonstrated no limitation during three exams. The mild changes in the right hand required no additional limitation on sedentary work.

---

[22]SSA record at p. 20.

[23]42 U.S.C. § 423 (d)(5(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. §§ 404.1508 & 416.908.

[24]6 Attorneys' Textbook of Med. 19B.00 (3d ed.).

[25]*Id*. at 19B.50.

[26]SSA record at pp. 347, 361 & 514.

[27]*Id*. at pp. 375-76, 407 & 514.

2. <u>Coronary artery disease</u>. A few months after applying for disability benefits, Stewart learned she has coronary artery disease. She had three blocked arteries. She underwent coronary artery bypass grafts to improve the blood flow to the heart.[28] Since that time, Stewart hasn't had any problems, despite risk factors.[29] Her risk factors include smoking, obesity, lack of exercise, high blood pressure, and high cholesterol.[30]

People with coronary artery disease often experience chest pain, shortness of breath, fatigue, and disturbed sleep. Stewart complains about these symptoms. Stewart's symptoms might improve if she complied with medical recommendations, but for now, Stewart's symptoms support the reduction of work to a sedentary level. Stewart attributes her symptoms to physical exertion.[31] Sedentary work requires little physical exertion. Stewart's failure to comply with medical recommendations weighs against her credibility.

3. <u>Breathing problems</u>. Stewart complains about shortness of breath. The record includes a diagnosis of chronic obstructive pulmonary disease (COPD).[32] COPD is a progressive disease of the respiratory system which makes it harder to breathe. Smoking cigarettes is the primary cause of COPD.[33] Stewart has smoked cigarettes for 40 years,[34] but a "history of

---

[28]*Id*. at pp. 404 & 482.

[29]*Id*. at p. 468 (per cardiologist, she is doing well; cardiologist reassured Stewart and advised her stop smoking).

[30]Lori De Milto & Teresa G. Odle, 2 The Gale Encyclopedia of Med. 1179-80 (4th ed.).

[31]SSA record at p. 55.

[32]*Id*. at pp. 537 & 543.

[33]Harry W. Golden & Tish Davidson, 2 The Gale Encyclopedia of Med. 1026 (4th ed.).

[34]SSA record at pp. 64 & 373.

heavy smoking is not enough to diagnose COPD."[35]

COPD is diagnosed using pulmonary function testing (PFT) or a diffusion study. The record includes no diagnostic test. Without test results, there is no way to determine the extent of Stewart's breathing difficulty, but her continued smoking indicates her problems are not significant. Without test results, the medical evidence lacks the medically acceptable clinical and laboratory diagnostic findings needed to establish COPD as an impairment.[36] Even if Stewart has COPD, the ALJ eliminated work environments with pulmonary irritants that could make it harder to breathe.

4. <u>Sleep disturbance</u>. Stewart complains about poor sleep. At times she complained about an inability to sleep; at other times, she complained about too much sleep. The record includes a diagnosis of sleep apnea.[37] "Sleep apnea is a condition in which breathing stops for more than ten seconds during sleep."[38] Obesity and smoking are major risk factors for sleep apnea.[39] Stewart has these risk factors. Sleep apnea is diagnosed

---

[35]Harry W. Golden & Tish Davidson, 2 The Gale Encyclopedia of Med. 1026 (4th ed.).

[36]42 U.S.C. § 423 (d)(5(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

[37]SSA record at p. 537.

[38]Richard Robinson & Rebecca J. Frey, 5 The Gale Encyclopedia of Med. 4017 (4th ed.).

[39]*Id*. at p. 4018.

using a sleep study.⁴⁰ The record includes no sleep study. Without a sleep study, the medical evidence lacks the medically acceptable clinical and laboratory diagnostic findings needed to establish sleep apnea as an impairment.

Even if Stewart has sleep apnea, there is no indication it impairs her ability to work. Stewart has received no treatment for sleep apnea, other than a recommendation to stop smoking. The lack of treatment and Stewart's failure to stop smoking indicates sleep apnea does not significantly limit her ability to work. Smoking itself may be the cause of Stewart's sleep disturbance because "smokers often wake up after only a few hours of sleep due to nicotine withdrawal."⁴¹

A reasonable mind would accept the foregoing evidence as adequate to show Stewart can work within the defined parameters because it shows nothing preventing Stewart from lifting 10 pounds or occasionally lifting or carrying articles like docket files, ledgers, and small tools. Stewart reported that she can lift 15 pounds.⁴²

**Opinion evidence**. The success of Stewart's claim turns on her primary argument — her complaint about the ALJ's resolution of conflicts in medical evidence, particularly the opinion evidence — because the medical evidence doesn't justify a further reduction in the ability to work. Stewart complains primarily about the rejection of the third examining doctor's opinion that she is unable to sit for more than four hours

---

⁴⁰*Id*. at p. 4019.

⁴¹Rebecca J. Frey, Stephanie M. Watson & Ruth A. Wienclaw, 5 The Gale Encyclopedia of Med. 4030 (4th ed.).

⁴²SSA record at pp. 301 & 406.

in an eight-hour workday. The ALJ rejected the opinion. If Stewart can't sit for more than four hours, she cannot do sedentary work. The question before the court is whether the ALJ had a proper basis for rejecting the opinion.

The ALJ must resolve the conflicts in the medical evidence before determining a claimant's ability to work.[43] That duty applies to medical opinion evidence.[44] "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."[45] Stewart's argument implicates three consultative exams.

The first exam was done a few weeks before the coronary artery bypass grafts.[46] The examiner found exertional limitations; specifically with lifting, carrying, walking, and standing.[47] The presence of coronary artery disease supports exertional limitations because people with coronary artery disease often experience shortness of breath and fatigue with exertion, especially people like Stewart who smoke and do no regular

---

[43]*Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."

[44]*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) ("It was the ALJ's task to resolve the differences between these consultative evaluations in the light of the objective evidence.").

[45]*Pearsall*, 274 F.3d at 1219.

[46]SSA record at p. 372.

[47]*Id.* at p. 377.

exercise. Sedentary work does implicate Stewart's symptoms because it involves mostly sitting.

The second exam was done three months after the coronary artery bypass grafts.[48] The second examiner thought that Stewart could sit, walk, and/or stand for a full work day, and lift/carry up to 20 pounds.[49] A person who do that can do light work. A person who can do light work can do sedentary work because light work requires more physical exertion. The opinion is particularly probative because the exam was done a few months after the coronary artery bypass grafts.

The third exam was an orthopedic exam; it was done five weeks after Stewart's first hearing. The ALJ probably ordered the exam because Stewart complained about right shoulder pain and the record included no diagnostic imaging of the right shoulder. The examiner ordered x-rays of the right shoulder. The x-rays showed a normal right shoulder.[50]

Although Stewart had a full range of motion in the right shoulder and lumbar spine without pain, the examiner completed a medical source statement indicating that Stewart can sit for no more than four hours in an eight-hour workday.[51] The ALJ

---

[48]*Id*. at p. 406.

[49]*Id*. at p. 409.

[50]*Id*. at p. 514.

[51]*Id*. at p. 516.

properly rejected that opinion because there is no medical basis for believing Stewart is unable to sit for no more than four hours per day, and the because the opinion is inconsistent with the record as a whole. The opinion had to be based on Stewart's subjective report because the imaging showed only "a minimal degree" of osteoarthritic change in the back and because Stewart had a full, painless ranges of motion.[52]

The ALJ properly relied on clinical and laboratory diagnostic findings to resolve the conflicts. Stewart's cardiologist thinks she is doing well. She demonstrated no functional impairment at three consultative exams. Coronary artery disease may limit her ability to physically exert herself, but nothing shows it prevents her from sitting. The ALJ did not err in resolving the conflicts.

**Vocational evidence**. After determining Stewart's ability to work, the ALJ asked a vocational expert about available work. Despite the numerous limitations the ALJ placed on sedentary work, the vocational expert identified available work.[53] Stewart suggests the ALJ considered an erroneous age, but the record shows the ALJ and the vocational expert knew how old Stewart was: 52 when she claims she became disabled and 56 at the time of the hearing and the ALJ's decision.[54]

---

[52]*Id*. at p. 514.

[53]*Id*. at pp. 50 & 78-79.

[54]*Id*. at pp. 24 & 37.

A person's age is important in determining whether a claimant is disabled because the regulations provide for special rules for claimants of advanced age (age 55 or older) who are limited to sedentary or light work. Under the special rules, the ALJ will find the claimant can make an adjustment to other work if she has skills that can transfer to other skilled or semiskilled work that she can do despite her impairment.[55] The vocational expert confirmed that Stewart has transferrable skills.[56] The vocational evidence shows that work exists that Stewart can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[57] Because such work exists, Stewart is not disabled.

**Conclusion and recommendation**. Sedentary work is a significantly restricted range of work; only individuals with very serious functional limitations are unable to do sedentary work. Stewart does not have a very serious functional limitation that prevents her from doing sedentary work. Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate

---

[55] 20 C.F.R. §§ 404.1568(d)(4) & 416.968(d)(4). To be transferrable, other work must be so similar to the claimant's previous work that she would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. *Id*.

[56] SSA record at p. 50.

[57] 42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).

A person's age is important in determining whether a claimant is disabled because the regulations provide for special rules for claimants of advanced age (age 55 or older) who are limited to sedentary or light work. Under the special rules, the ALJ will find the claimant can make an adjustment to other work if she has skills that can transfer to other skilled or semiskilled work that she can do despite her impairment.[55] The vocational expert confirmed that Stewart has transferrable skills.[56] The vocational evidence shows that work exists that Stewart can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[57] Because such work exists, Stewart is not disabled.

**Conclusion and recommendation**. Sedentary work is a significantly restricted range of work; only individuals with very serious functional limitations are unable to do sedentary work. Stewart does not have a very serious functional limitation that prevents her from doing sedentary work. Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate

---

[55] 20 C.F.R. §§ 404.1568(d)(4) & 416.968(d)(4). To be transferrable, other work must be so similar to the claimant's previous work that she would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. *Id*.

[56] SSA record at p. 50.

[57] 42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).

judge recommends DENYING Stewart's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

It is so ordered this 16th day of June, 2014.

_____
United States Magistrate Judge